210 N.J. Super. 543 (1986)
510 A.2d 133
IN THE MATTER OF NANCY ELLEN JOBES.
Superior Court of New Jersey, Chancery Division Morris County.
Decided February 26, 1986.
*544 Paul W. Armstrong for plaintiff (Weiner & Weiner, attorneys).
Herbert D. Hinkle for Dept. of Publ. Adv. (Alfred Slocum, Publ. Adv.).
Richard Kahn, guardian ad litem (Dillon, Bitar & Luther, attorneys).
Raymond M. Tierney, Jr. (Shanley & Fisher, attorneys) and Richard J. Traynor (Traynor & Hogan, attorneys) for Lincoln Park Nursing Home.
ARNOLD M. STEIN, J.S.C.
Plaintiff brings this action seeking the removal of a life-sustaining food nutrition system from his comatose[1] wife, a resident of Lincoln Park Nursing Home.
The nursing home opposes this action, and moves for the appointment of a "life advocate," one who will "fight for the life" of Nancy Ellen Jobes, i.e., for the continuation of all available means of medical treatment, regardless of her physical or mental condition.
Nancy Ellen Jobes is now 30-years-old. She has been lying unconscious since April 1980, when she sustained an anesthesiological misadventure during the course of surgery.
*545 Plaintiff and Nancy Ellen were married in 1976. In March 1980 she was hospitalized for what appeared to be minor injuries sustained in an automobile accident. She was then four and one-half months pregnant. At first it was believed that the fetus was still alive. Subsequently, it was determined that the fetus had died.
On April 2, 1980, Ms. Jobes underwent surgery for removal of the fetus. During the course of this operation, she sustained an acute cardiopulmonary collapse and a severe loss of oxygen to the brain. This caused massive brain damage, resulting in her non-cognitive state.
In 1984, during the pendency of a malpractice action brought on her behalf, Ms. Jobes was adjudicated incompetent.
Ms. Jobes is incontinent. She requires a catheter for the removal of bodily waste. At first, she received sustenance through a nasogastric tube. In December 1980, it became necessary to insert a gastrotomy tube into her stomach. In June 1985 this device also failed and a feeding jejunostomy tube was surgically implanted in her small intestine. Liquid nutrition and water, regulated by a pump, continuously drip through the tube. On at least three occasions, Ms. Jobes has been hospitalized for complications resulting from utilization of the "j-tube."
Participating in this action are: plaintiff, who brings this action as guardian of the person and property of his wife; Richard Kahn, the court-appointed guardian ad litem for Nancy Ellen Jobes; the Office of the Public Advocate; the Office of the Ombudsman for the Institutionalized Elderly, to the extent deemed necessary by that office to protect the interests of its elderly constituents;[2] and the nursing home.
*546 When the nursing home first sought to bring this motion, the matter was deferred until the guardian ad litem reported his position to the court. Thereafter, Mr. Kahn responded that, based upon all information now available to him, it is in the best interests of, and in accordance with the wishes of Nancy Ellen Jobes, to remove the "j-tube" automatic feeding system, thereby permitting termination of her life. He reserves the right to alter this opinion if facts and circumstances provided at or before the trial reveal that Ms. Jobes is not permanently non-cognitive.
Contrary to the initial contention asserted by the nursing home, it is not the function of the guardian ad litem in these life-support cases to argue for continuation of the incompetent ward's life in each and every case. Such a view misconceives the time-honored obligation of the guardian ad litem to act in the best interests of the ward. In re Grady, 85 N.J. 235, 264 (1981). The role of the guardian ad litem is "to insure the protection of the rights and interests of a litigant who is apparently incompetent to prosecute or defend the lawsuit." In re Commitment of S.W., 158 N.J. Super. 22, 25-26 (App.Div. 1978).
No reported case in this or any other jurisdiction has authorized the appointment of a "life advocate." The request must be denied, not because it is without precedent, but because it is without merit.
Our case law does not require the continuation of life support systems under all circumstances. In re Quinlan, 70 N.J. 10 (1976), cert. den., sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); Matter of Conroy, 98 N.J. 321 (1985). It would be improper for this court to appoint a guardian who would be compelled to advance the singular view that, regardless of the facts and circumstances  and whatever the stated intention of the now-incompetent ward  extraordinary life-support measures must be implemented or continued. Such a position collides with the ward's constitutional and *547 common-law right of privacy. Quinlan, supra, 70 N.J. at 38-41. Both the competent and the once-competent possess a right of self-determination, the right of an individual "to behave and act as he deems fit, provided that such behavior and activity do not conflict with the precepts of society." Conroy, supra, 98 N.J. at 358.
The courts of this state must remain sensitive to the ethical and legal questions presented by these cases involving requests to terminate life by withholding or withdrawing life-sustaining medical measures. Our Supreme Court cautions us that this area of law is evolving slowly. Each case presents its own peculiar problems. Conroy, 98 N.J. at 387-388. The interests of Nancy Ellen Jobes and those of the public are well-served by the parties now participating in this case. No interest is legitimately advanced by the appointment of a "guardian for life" or, for that matter, a "guardian for death," committed to one viewpoint, regardless of the existing facts and circumstances.
Courts should attempt to gather all the information which can be made available in order to render a meaningful decision in this most difficult area of judicial responsibility. Superintendent of Belchertown State School v. Saikewicz, 373 Mass. 728, 757-758, 370 N.E.2d 417, 434 (1977). At the same time, extreme caution must be exercised in the appointment of guardians by the court. Courts appoint guardians to act in the best interest of their wards. Guardians or "advocates" who come to this formidable task with a commitment to achieve a particular result  such as death or the continuation of life  are not fulfilling this solemn fiduciary duty of protecting their charges. In this type of case, it is inappropriate to confer upon advocates of a particular philosophy the mantle of court-appointed fiduciary.
There is a serious question of the standing of Lincoln Park Nursing Home to bring this motion. A strong argument could be made that this defendant is abandoning its role as the caretaker of Nancy Ellen Jobes for that of an intruder into the *548 personal affairs of her and her husband. Nevertheless, because resolution of this matter arguably serves the public interest, standing will be deemed to exist. Quinlan, 70 N.J. at 34-35; Walker v. Stanhope, 23 N.J. 657, 661-666 (1957).
Defendant Lincoln Park Nursing Home's motion, seeking the appointment of a "life advocate" or "guardian for life" for Nancy Ellen Jobes, is denied.
NOTES
[1] The use of such phrases in this opinion as "comatose," "unconscious" and "non-cognitive" is not meant to be dispositive of certain issues which must be decided at the trial; e.g., whether Nancy Ellen Jobes is presently in a vegetative state; what level, if any, of consciousness exists, and whether she does, in fact, respond in a comprehending sense to external stimuli, such as pain and the commands of others.
[2] The Ombudsman is charged with monitoring the public policy of this state: "to secure for elderly patients, residents and clients of health care facilities ... the same civil and human rights guaranteed to all citizens; ..." [N.J.S.A. 52:27G-1; Matter of Conroy, 98 N.J. 321, 378-380 (1985).]